UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PHYLISS P. MEADERS,

                Plaintiff,                          18-cv-5039 (PKC)

       -against-                           OPINION
                                                         AND ORDER
ANTOINE HELWASER, HELWASER
GALLERY, and HELWASER FINE ART, INC.,

                Defendants,

       -and-

ANTOINE HELWASER, HELWASER
GALLERY, and HELWASER FINE ART, INC.,

                Third-Party Plaintiffs,

       -against-

PAUL L. MEADERS III,

                Third-Party Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        This is a suit over the ownership of a sculpture (the "Work") created by Alexander Calder, a famous American sculptor. Plaintiff Phyliss P. Meaders ("Phyliss") claims conversion and unjust enrichment against Antoine Helwaser, Helwaser Gallery, and Helwaser Fine Art, Inc. (collectively, "Helwaser"). She seeks replevin, a declaration of ownership of the Work, and damages. Helwaser subsequently brought a third-party complaint against third-party defendant, Paul L. Meaders III ("Paul").[1] (Verified Answer, Affirmative Defenses, and Third-Party Compl.

---

[1] After repeated failed attempts to serve Paul, (Decl. of Judd B. Grossman (Doc. 25-1)), Helwaser was permitted to effectuate service by alternate means. Helwaser certifies service was effectuated via email and that Helwaser's counsel spoke to Paul on the phone, informing him of this email service. (Certificate of Service (Doc. 27)). Paul has not subsequently entered an appearance in this case or otherwise responded to the third-party complaint.

(Doc. 16)). Helwaser now moves for summary judgment on all of Phyliss's claims. Rule 56(a), Fed. R. Civ. P. For the reasons that follow, Helwaser's motion for summary judgment is granted.

BACKGROUND

The facts recounted are undisputed unless otherwise noted. The Court draws all reasonable inferences in favor of the nonmovant, Phyliss. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

In 1976, Phyliss's father received the Work from its creator, Alexander Calder. (Def. 56.1 ¶ 2 (Doc. 37); Pl. 56.1 Resp. ¶ 2 (Doc. 42)). Upon the death of Phyliss's father, the Work passed by his will to Phyliss's stepmother, Jane Meaders ("Jane"). (Def. 56.1 ¶¶ 3–4; Pl. 56.1 Resp. ¶¶ 3–4). Jane possessed the Work until her death on October 24, 2001. (Def. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5); (Ex. 5 at 1 (Doc. 36-5 at 1)).

Jane's will named Phyliss's brother, Paul, as executor and granted the executor "broad discretion" in administering the estate. (Def. 56.1 ¶¶ 8–9; Pl. 56.1 Resp. ¶¶ 8–9). The will bequeathed all "tangible personal property," excluding certain specified items, to Phyliss and Paul "in equal shares." (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7). This included the Work. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7). Another clause of Jane's will directed that any "residuary estate" also be given to Phyliss and Paul in "equal shares." (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7). On July 23, 2002, a New York State Estate Tax Return was filed by Paul, as executor, which appraised the Work at $30,000. (Def. 56.1 ¶ 13; Pl. 56.1 Resp. ¶ 13); (Ex. 6 at 1 (Doc. 36-6 at 1)).

After Jane's death, Paul took physical possession of the Work. (Def. 56.1 ¶ 14; Pl. 56.1 Resp. ¶ 14). Phyliss never had physical possession of the Work and never invoked legal process to obtain possession of the Work. (Def. 56.1 ¶¶ 15, 18; Pl. 56.1 Resp. ¶¶ 15, 18). In approximately January 2015, Paul emailed Phyliss, stating "I have been considering selling the

[Work]." (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17). Phyliss and Paul's next email exchange regarding the Work did not occur until December 2016. (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17).

In December 2015, Paul and his wife discussed selling the Work with Helwaser. (Def. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19). On January 26, 2016, Paul sold the Work to Helwaser for $277,500. (Def. 56.1 ¶ 20; Pl. 56.1 Resp. ¶ 20). On an invoice documenting this sale, Paul warranted that he was "the undisputed owner of the [W]ork and has full authority to sell the [W]ork," which was "sold free of liens and encumbrances." (Def. 56.1 ¶ 21; Pl. 56.1 Resp. ¶ 21). Helwaser wrote Paul a check for the agreed purchase price. (Def. 56.1 ¶ 22; Pl. 56.1 Resp. ¶ 22). Subsequently, Helwaser sold the Work to a third party. (Def. 56.1 ¶ 24; Pl. 56.1 Resp. ¶ 24).

SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). "When the burden of proof at trial would fall on the

nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Id. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). Further, a district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). It is not appropriate for the Court to make credibility assessments or resolve conflicting versions of event presented. These are essential questions for a jury. Id.

DISCUSSION

    I.    <u>Plaintiff Fails to Produce Evidence Demonstrating Her Ownership of the Work</u>.

In support of their summary judgment motion, Helwaser makes a single argument, that "Plaintiff never owned the [Work], either jointly with [Paul], or outright" and, without proof of title to the Work, all of plaintiff's claims fail as a matter of law.[2] (Mem. of Law in Supp. of

---

[2] The Court possesses proper subject matter jurisdiction in this diversity matter as Phyliss is a citizen of Massachusetts and all defendants are citizens of New York. (FAC ¶¶ 7–10). The Court also notes that the probate exception to its diversity jurisdiction does not apply in this case as Phyliss, a beneficiary of Jane's will, "does not seek to 'administer

Defs.' Mot. for Summ. J. at 7 (Doc. 35 at 7)). Specifically, Helwaser first contends that Paul, as executor of Jane's will, had "unqualified legal title" to the Work and, therefore, had authority to sell it. (Doc. 35 at 7–10). Phyliss, who had no role administering Jane's estate, lacked any similar title over the Work. (Doc. 35 at 7). On reply, Helwaser argues that Phyliss failed to adduce any evidence showing her possession of an ownership interest in the Work and therefore failed to produce evidence supporting an essential element of all of her claims. (Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J. at 2 (Doc. 45 at 2)). Phyliss argues that the Work had been distributed from Jane's estate, and therefore was no longer under Paul's control as executor, as well as that she has produced sufficient evidence showing her ownership interest in the Work prior to the January 26, 2016 sale, thus creating a genuine dispute of material fact that necessitates the denial of defendants' motion. (Mem. of Law in Supp. of Pls.' Opp. to Defs.' Mot. for Summ. J. at 5 (Doc. 39 at 5)). The Court, based on the totality of the evidence produced viewed in the light most favorable to the nonmovant, concludes that Phyliss has failed to produce evidence upon which a reasonable jury could find that she owned the Work prior to the January 26, 2016 sale. The Court therefore grants defendants' motion for summary judgment.

    A. <u>Plaintiff Establishes that Jane's Estate Was Distributed Prior to 2016</u>.

The Work was part of Jane's estate at the time of her death. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7). Jane's will did not specifically bequeath the Work, but instead divided all of her tangible property into two parts. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7). The first of these parts, consisting of clothing, furs, and certain jewelry, was bequeathed to Jane's sister, if she survived her, or otherwise to her sister's children. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7); (Ex. 3 at 1 (Doc. 36-

---

an estate, probate a will, or do any other purely probate matter,'" but instead seeks recovery of or damages related to property already distributed from the estate. <u>Roistacher v. Bondi</u>, 624 F. App'x 20, 22 (2d Cir. 2015) (quoting <u>Lefkowitz v. Bank of N.Y.</u>, 528 F.3d 102, 106 (2d Cir. 2007)).

3 at 1)).  The second part, consisting of the balance of Jane's tangible property, was left in "equal shares" to Phyliss and Paul, if each survived her (as they did). (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7). The Work was included in this second part of the tangible property. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7).

Jane's will empowered Paul, as executor, "to exercise from time to time in his sole discretion and without prior authority from any court, in respect to any property forming part of my estate or otherwise in his possession hereunder, all powers conferred by law upon executors and trustees, or expressed in the will and intend that such powers . . . be construed in the broadest possible manner." (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8). Among will's enumerated powers, Paul was permitted "to make distributions in cash or in specific property, real or personal, or an undivided interest therein." (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9). Thus, Paul possessed the power to sell the Work and distribute the proceeds in equal shares to Phyliss and himself, distribute the Work to Phyliss and give himself a credit for one-half of the appraised value of the Work at the time of distribution, or distribute the Work to himself and grant to Phyliss a credit for one-half of the appraised value of the Work at the time of distribution. Jane died on October 24, 2001 and Paul was granted letters testamentary on November 28, 2001. (Def. 56.1 ¶¶ 5, 11–12; Pl. 56.1 Resp. ¶¶ 5, 11–12). The sale to defendants occurred on January 26, 2016. (Def. 56.1 ¶ 20; Pl. 56.1 Resp. ¶ 20).

Phyliss seeks to defeat summary judgment by arguing that Jane's estate had been distributed long before the January 26, 2016 sale and, therefore, Paul lacked executory power over the Work to effectuate its sale to defendants. She cannot be blamed for advancing this reasoning because Helwaser initially framed its argument in terms of having purchased the Work from Paul, the executor, rather than Paul, the distributee under Jane's will. Phyliss submits the declaration of

the probate attorney for Jane's estate, who asserts that the estate had been fully distributed by the time the estate's New York State Estate Tax Return was filed in 2002.[3] (Decl. of R. Demarest Duckworth III at 2, 4 (Doc. 41 at 2, 4)). Phyliss also notes that no report was ever filed under the Uniform Rules for the Surrogate's Court as required "[w]henever the estate of a decedent has not been fully distributed" within three years of issuance of the letters testamentary. N.Y. Comp. Codes R. & Regs. tit. 22, § 207.42(a)–(b) (2020). Based upon this unchallenged evidence, the Court agrees that the estate was fully distributed by July 23, 2002, when the New York State Estate Tax Return for Jane's estate was filed. (Ex. 6 at 1). As such, Paul lacked executory power over the Work at the time of the January 26, 2016 sale to defendants.

   B. Plaintiff Fails to Produce Evidence that She Possessed an Ownership Interest in the Work Prior to 2016.

Finding that the Work was no longer part of Jane's estate on January 26, 2016 does not end the Court's inquiry. Helwaser correctly notes that "the relevant inquiry is not whether, at the time of the [Paul's] sale to [Helwaser], the Work was still part of [Jane's] [e]state or whether [Paul] owned it outright." (Doc. 45 at 4). Instead, Helwaser succinctly asserts that "the fundamental question . . . is whether *Plaintiff* had any ownership in the Work." (Doc. 45 at 4). The Court agrees and concludes that no reasonable jury, properly instructed on the meaning of the language of Jane's will and the governing provisions of New York law, could conclude based on the evidence produced that Phyliss had any ownership interest in the Work as of January 26, 2016.

First, Phyliss cannot argue that the fact of the estate's distribution itself is probative evidence that she received an ownership share in the Work as a result of this distribution. As discussed, Paul's broad discretion as executor permitted him, upon distribution of the estate to its beneficiaries, to take possession of the Work as a distributee and grant Phyliss a credit for one-half

---

[3] This declaration is curiously silent concerning the Work.

of the appraised value of the Work on that date. As such, the distribution of all estate assets by July 23, 2002 is in no way inconsistent with the Work having been distributed by Paul, as executor, to himself, as distributee, with an off-setting credit to Phyliss, especially since the $2.7 million estate contained ample assets to cover an offsetting credit for one-half the value of the Work, which was then appraised at $30,000. (Ex. 6 at 1, 14). Such a distribution is legally permissibly. (Def. 56.1 ¶¶ 8–9; Pl. 56.1 Resp. ¶¶ 8–9) (stating that Jane's will granted Paul "sole discretion" and broad powers "to make distributions in cash or in specific property, real or personal"); see also N.Y. Est. Powers & Trusts Law § 11-1.1(b)(20) (McKinney 2019) (authorizing a fiduciary to distribute any property "in kind valued at the fair market value of the property at the date of distribution"); In re Hostin's Estate, 223 N.Y.S.2d 893 (Sur. Ct., N.Y. Cty. 1961) (finding no breach of duty by an executrix's in-kind distribution of property to herself despite the will's silence on the subject). There is nothing in the summary judgment record that casts doubt as to Paul's authority under Jane's will so long as Phyliss received an off-setting amount of tangible property or its equivalent monetary value.

Second, Phyliss produces no evidence in support of her allegation that she received an "undivided one-half interest" in the Work upon the estate's distribution. Phyliss produces no Surrogate's Court filing, no accounting, and no inventory to support her possession of anything more than a beneficial interest in the Work, an interest which could have been satisfied by the provision of one-half of the Work's appraised value on the date of distribution. She produces no documents reflecting the details of the distribution of Jane's estate. Without such evidence, Phyliss cannot demonstrate to a jury that she received an actual ownership interest in the Work upon distribution or that she did not receive an off-setting credit, in the form of in-kind property or cash, in satisfaction of her beneficial interest in the Work. She offers no allegations of an oral agreement

or even a conversation with Paul, reflecting an intention to distribute the Work in a manner such that the siblings would share joint ownership. Phyliss does not claim to have ever had physical possession of the Work after Jane's death, (Def. 56.1 ¶ 15; Pl. 56.1 Resp. ¶ 15), and, as such, cannot provide any pattern or practice evidence demonstrating an ownership interest in the Work.

Further, Phyliss's reliance upon the "Provenance" section of Helwaser's invoice documenting the January 26, 2016 sale, as well as similar provenances contained within other documents, fails to fill this evidentiary gap. The provenance contained on the January 26, 2016 invoice reads simply "Paul L. Meaders III, Phyliss Meaders Hurley, New York; Jane D. Meaders, New York; Paul L. Meaders Jr. New York" and then explains that the "Work was gifted to Paul L Meaders Jr. in 1976 while he visited Alexander Calder in France to prepare the artist's will." (Ex. 11 at 1 (Doc. 40-1 at 1)). The provenance of a piece of art is its history or at least part of the history of the piece's path from the hands' of the artist to those of the present owner. DeWeerth v. Baldinger, 836 F.2d 103, 112 (2d Cir. 1987) (defining the "provenance" of a piece of art as "a history of its ownership"); Porter v. Wertz, 416 N.Y.S.2d 254, 257 (1st Dep't 1979), aff'd, 53 N.Y.2d 696 (1981) (defining "provenance" as the "history of ownership or the right to possess or sell an object d'art"). However, a writing reflecting a piece's provenance is not akin to a recorded deed to real property; it is only an explanation of how the piece came into the seller's hands. Therefore, Paul's inclusion of Phyliss in the provenance appearing on the invoice is quite appropriate and logical. Under Jane's will, Phyliss and Paul were left the bulk of Jane's tangible property "in equal shares." As such, Phyliss had a beneficial interest in the Work until the executor exercised his discretion to distribute the Work to himself or to otherwise sell it, meriting her

inclusion in the provenance.[4]  Further, this invoice, on which Phyliss relies, is hardly an unambiguous admission by Paul that he shared joint ownership over the Work with Phyliss. Instead, the invoice states that a check should be made payable to Paul and warrants that Paul "is the undisputed owner of the [W]ork and has full authority to sell the [W]ork." (Def. 56.1 ¶ 21; Pl. 56.1 Resp. ¶ 21); (Ex. 11 at 1). Thus, in context, the "Provenance" section documented on this very same page of the January 26, 2016 invoice is not a reliable statement by Paul that Phyliss is an owner or co-owner of the Work. Phyliss fails to produce any evidence upon which a reasonable jury could find that she had an ownership interest in the Work after the distribution of Jane's estate.

Third, Phyliss does not assert that she ever made a claim in New York Surrogate's Court of any faithless act by Paul. Phyliss does not claim that she was unaware of the existence of the Work as part of Jane's estate or that she was unaware of her entitlement to one-half of the estate's tangible property. Phyliss offers no evidence of any action on her behalf undertaken to protect or assert control over the Work. She offers no explanation for her decade-long failure to pursue steps to realize possession of the Work, such as cleaning, caring for, taking custody of, displaying, insuring, or initiating legal action related to the Work. As early as January 2015, nearly a year before the actual sale, Phyliss had notice that Paul might sell the Work, but still took no action as to the Work until almost two years later. (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17).

In the event that Paul, as executor, breached his fiduciary duties through the distribution of the Work or otherwise, the remedies available to Phyliss, as the injured beneficiary, in New York Surrogate's Court were sweeping. Estate of Rothko, 379 N.Y.S.2d 923, 965 (Sur. Ct., N.Y. Cty. 1975), decree modified sub nom. Will of Rothko, 392 N.Y.S.2d 870 (1st Dep't

---

[4] Cf. Schoellkopf v. Marine Tr. Co. of Buffalo, 267 N.Y. 358, 362 (1935) ("Any person who under the terms of the instrument has a right, whether present or future, whether vested or contingent, to income or principal of the trust fund, has a beneficial interest in the trust.").

1977), aff'd sub nom. In re Rothko's Estate, 43 N.Y.2d 305 (1977). "The beneficiaries may have the option of not only charging the fiduciary with a loss or making him account for a gain but also of charging him with a gain which was not made but would have been made if the fiduciary had not violated his duty." Id. Executors can also be removed for breaches of duty. N.Y. Surr. Ct. Proc. Act Law § 711 (McKinney 2019); see also In re Duke, 87 N.Y.2d 465, 472–73 (1996) (stating that the court may remove an executor for breach of fiduciary duty).

Phyliss has failed to come forward with evidence on which a reasonable jury could conclude that she had an ownership interest in the Work prior to its sale to Helwaser.

CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk is directed to terminate this motion. (Doc. 34). In light of this disposition, Helwaser's third-party complaint against Paul is dismissed as moot. (Doc. 16). The Clerk is directed to enter judgment for defendants and terminate this case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 29, 2020